IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KITTITAS COUNTY, a municipal corporation and political subdivision of the State of Washington, | ) ) ) ) | No. 33241-1-III |
| Respondent, | ) ) ) | |
| v. | ) ) | |
| SKY ALLPHIN, ABC HOLDINGS, INC., CHEM-SAFE ENVIRONMENTAL, INC., | ) ) ) ) | OPINION PUBLISHED IN PART |
| Appellants, | ) ) | |
| WASHINGTON STATE DEPARTMENT OF ECOLOGY, | ) ) ) | |
| Defendant. | ) | |

LAWRENCE-BERREY, A.C.J. — In 2011, Kittitas County (the County) issued a

notice of violation and abatement (NOVA) to Chem-Safe Environmental, Inc. and its

parent company, ABC Holdings, Inc. (collectively Chem-Safe) for storing and handling

moderate risk waste without proper county permits. The Kittitas County Prosecuting

Attorney's Office sought assistance from technical professionals at the Washington State

Department of Ecology (Ecology), and the deputy prosecutor and Ecology employees

exchanged e-mails throughout the regulatory enforcement litigation.

Sky Allphin, Chem-Safe's president, then submitted a Public Records Act (PRA) request under chapter 42.56 RCW, seeking the County's records pertaining to the case, including its attorneys' e-mails and correspondence. The trial court reviewed the e-mails in camera and determined they were a product of litigation ongoing between the County and Mr. Allphin and were, therefore, exempt from production under the PRA.

Mr. Allphin argues the sealed e-mails are not attorney work product or attorney client privileged and, even if they are, the County waived any privilege when it exchanged the e-mails with Ecology. In the published portion of this opinion, we discuss the "common interest doctrine," an exception to the rule that the presence of a third party to a communication waives a privilege. We hold that this doctrine applies here, and the County did not waive any privilege by consulting with Ecology.

Mr. Allphin also argues (1) the County's exemption logs are inadequate, (2) the County violated the PRA when it initially withheld or redacted records and then subsequently produced those same records, (3) the County failed to provide the fullest assistance, (4) the County unlawfully withheld handwritten notes by Richard Granberg, and (5) the County abused the judicial process and this court should release the e-mails as a sanction. In the unpublished portion of this opinion, we agree with Mr. Allphin that the County wrongfully withheld six e-mails, but disagree with his remaining arguments. We

2

therefore affirm in part, reverse in part, and remand for further proceedings.

## FACTS

Chem-Safe operates a hazardous waste transport and transfer facility in Kittitas County, Washington. Beginning in 2009 or 2010, the County and Ecology worked with Chem-Safe to develop operations and engineering plans that would comply with Washington's waste handling regulations. In December 2010, James Rivard, the environmental health supervisor for the Kittitas County Public Health Department (KCPHD), received letters from the Idaho Department of Environmental Quality. The letters said an Idaho disposal company sent three shipments of waste back to Chem-Safe because the contents of Chem-Safe's waste drums did not match the labels on the drums or Chem-Safe's paperwork.

Mr. Rivard inspected Chem-Safe's facility and observed moderate risk waste materials. Chem-Safe did not have a permit from KCPHD to collect moderate risk waste or operate a moderate risk waste facility. Chem-Safe also failed to properly label hazardous waste, had unsanitary drums, and lacked a secondary containment for their drums.

The County issued Chem-Safe a NOVA, which alleged Chem-Safe had operated a hazardous waste facility without a proper permit, required Chem-Safe to take a number of abatement actions, and required Chem-Safe to suspend all facility operations until it

3

obtained a permit. Mr. Rivard copied his letter to Gary Bleeker, Ecology's facilities specialist lead, Wendy Neet, Ecology's solid waste inspector, and Richard Granberg, Ecology's hazardous waste specialist. The County issued a health order that incorporated the NOVA's findings and requirements.

Chem-Safe appealed the NOVA and the hearing examiner affirmed. Chem-Safe appealed to the superior court, which also affirmed and ordered Chem-Safe to submit a sampling plan and test its facility. Chem-Safe then appealed to this court. We upheld the NOVA and concluded Chem-Safe did not comply with the County's permitting ordinances. *See ABC Holdings, Inc. v. Kittitas County*, 187 Wn. App. 275, 284-86, 289, 348 P.3d 1222, *review denied*, 184 Wn.2d 1014, 360 P.3d 817 (2015).

Chem-Safe also brought a 42 U.S.C. § 1983 claim in federal court against the County, Ecology, Mr. Rivard, Mr. Granberg, Mr. Bleeker, and two other Ecology employees—Norman Peck with Ecology's toxics cleanup program, and his supervisor, Valerie Bound.

The Kittitas County Prosecuting Attorney's Office originally assigned Deputy Prosecutor Suzanne Becker to handle the Chem-Safe litigation. Deputy Prosecutor Zera Lowe later took over the case. The County's employees and Ecology's employees e-mailed one another and met in person throughout Chem-Safe's various appeals, and Ecology's employees generally acted in a consultative role with respect to the civil

4

enforcement action. For example, Mr. Peck kept Mr. Rivard updated as to whether

Chem-Safe had submitted a sampling plan, and discussed what the plan needed to include

in order to meet both agencies' requirements. After Chem-Safe moved to stay the

superior court's order, Ms. Lowe e-mailed Mr. Peck and asked for help responding to and

gathering additional declarations. Mr. Peck e-mailed Chem-Safe's declarations to the

other Ecology employees in order to coordinate a response, and also met with Ms. Lowe

and Mr. Rivard.

On October 17, 2012, Mr. Allphin submitted a PRA request to the County

requesting "[a]ll documentation, correspondence, pictures, court records and emails to

and from Kittitas County Public Health and Kittitas County Prosecutors Office regarding

Chem-Safe Environmental, Inc. dating from January 1, 2010 to current."[1] Clerk's Papers

(CP) at 70. Mr. Allphin sent Ecology a similar request, seeking all of Ecology's

documents regarding Chem-Safe. This request included all communications between

Ecology and the Kittitas County Prosecuting Attorney's Office while working on the

Chem-Safe case.

Ms. Lowe and legal secretary Angela Bugni were responsible for responding to

Mr. Allphin's PRA request. When Ms. Lowe learned Mr. Allphin had also requested

---

[1] Mr. Allphin also submitted two more PRA requests on November 21, 2012, and January 29, 2013. These requests were not voluminous, and the County responded to these requests without controversy.

records from Ecology, she asked Ecology's public records officer not to release any records containing communications between the County's legal counsel and Ecology employees that would disclose legal strategy or the attorneys' thought processes. Ecology's records officer advised Ms. Lowe that Ecology would not release the records until the County sought court protection. However, Ecology inadvertently released a few e-mails between Ms. Becker (the former deputy prosecutor) and Ecology that Ms. Lowe believed contained attorney work product.

The County filed a complaint in the superior court naming Mr. Allphin, Chem-Safe, and Ecology as respondents. The complaint sought a declaratory judgment that the County and Ecology's e-mails were attorney work product and attorney client privileged and thus exempt from production under the PRA. The County moved the superior court to review the records in camera and also moved for a temporary restraining order (TRO) enjoining Ecology from releasing the challenged records until the court had the chance to review them.

At the hearing, the County handed up one sealed envelope with the caption "DOCUMENTS SUBMITTED FOR IN CAMERA REVIEW." CP at 781. The cover sheet identified 11 individual e-mails and identified the sender, recipients, and date and time at which the e-mail was sent.

6

The superior court reserved ruling at the hearing and later issued a memorandum decision. The court reviewed the records in camera and determined the e-mails were a product of litigation ongoing between the County and Mr. Allphin and were, therefore, exempt from production under the PRA. The superior court also held the fact that the County e-mailed Ecology during the litigation did not waive this privilege, given that the County and Ecology worked cooperatively to enforce the environmental laws and were thus on the same "legal team." CP at 788.

In December 2013, the superior court incorporated its memorandum decision into a final order, dissolved the TRO, and permanently enjoined Ecology from producing the 11 e-mails it reviewed in camera. The court ordered Ecology to produce the e-mails it previously withheld under the TRO. The court found that sealing satisfied the *Ishikawa*[2] factors, then sealed the e-mails.

In March 2014, Mr. Allphin filed an amended answer and brought counterclaims against the County, alleging the County failed to provide the fullest assistance and unlawfully withheld nonexempt records. The County obtained new counsel. Throughout the next several months, the County and Mr. Allphin exchanged a number of letters discussing the adequacy of the County's PRA response.

---

[2] *Seattle Times v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982).

In one of his letters, Mr. Allphin listed 21 additional e-mails from the County's exemption logs that he wanted the court to review in camera. Mr. Allphin disagreed with the County's claim that these e-mails were work product and thus exempt from disclosure. The County agreed to assemble the 21 e-mails for a second in camera review. Mr. Allphin and the County continued to fine tune the list of records the County would submit for the second in camera review.

The County and Mr. Allphin both moved for summary judgment. At the hearing, the County handed the court a sealed envelope containing 21 e-mails. The court reviewed them and determined they contained attorney work product and were thus exempt from production under the PRA. The court ruled the County and Ecology exchanged the e-mails in response to the ongoing Chem-Safe litigation, and that the County and Ecology shared a common interest in the enforcement of state and local environmental regulations. The court also found the County's initial claims of exemption were lawful, that the County provided its fullest assistance, and that Mr. Granberg's handwritten notes, i.e., the "smoking gun memorandum" was not a County record and, therefore, the County had no duty to disclose it. CP at 2982. The court then granted summary judgment for the County. The court then sealed the e-mails and granted final judgment for the County. Mr. Allphin appeals.

No. 33241-1-III
*Kittitas County v. Allphin*

## ANALYSIS

### A. STANDARD OF REVIEW

This court reviews public agency actions challenged under the PRA de novo. RCW 42.56.550(3). We also review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Andrews v. Wash. State Patrol*, 183 Wn. App. 644, 650, 334 P.3d 94 (2014), *review denied*, 182 Wn.2d 1011, 343 P.3d 760 (2015). Summary judgment is proper where the pleadings and affidavits show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a motion for summary judgment, we construe the facts and reasonable inferences in favor of the nonmoving party. *Andrews*, 183 Wn. App. at 650-51. When the record consists entirely of documentary evidence and affidavits, we stand in the same position as the trial court and generally are not bound by the trial court's factual findings. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252-53, 884 P.2d 592 (1994).

### B. SEALED RECORDS FROM THE IN CAMERA REVIEW HEARINGS

The PRA is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). It requires all state and local agencies to disclose any public record on request, unless the record falls within certain narrowly construed exemptions. RCW 42.56.070(1), .030. It is the agency's

9

burden to show a redacted or withheld record was exempt. RCW 42.56.550(1). Where

the agency possesses undisclosed responsive records, it "must explain and justify any

withholding, in whole or in part, of any requested records." *Resident Action Council v.*

*Seattle Hous. Auth.*, 177 Wn.2d 417, 432, 327 P.3d 600 (2013). "Silent withholding is

prohibited." *Id.*

### 1. *The 21 e-mails from the second in camera review hearing*

Mr. Allphin argues that the 21 e-mails the trial court sealed following the second

in camera review hearing are not exempt under the PRA because they do not contain

attorney work product and are not attorney client privileged.

Under RCW 42.56.290, an agency does not have to disclose "[r]ecords that are

relevant to a controversy to which an agency is a party but which records would not be

available to another party under the rules of pretrial discovery for causes pending in the

superior courts." This includes communications containing attorney work product.

*Block v. City of Gold Bar*, 189 Wn. App. 262, 279-80, 355 P.3d 266 (2015). The attorney

client privilege similarly protects confidential communications between an attorney and a

client from discovery or public disclosure. *Mechling v. City of Monroe*, 152 Wn. App.

830, 852, 222 P.3d 808 (2009); RCW 5.60.060(2)(a).

Attorney work product includes "documents and other tangible things that

(1) show legal research and opinions, mental impressions, theories, or conclusions of the

10

attorney or of other representatives of a party; (2) are an attorney's written notes or memoranda of factual statements or investigation; and (3) are formal or written statements of fact, or other tangible facts, gathered by an attorney in preparation for or in anticipation of litigation." *Limstrom v. Ladenburg*, 136 Wn.2d 595, 611, 963 P.2d 869 (1998).[3] Work product documents need not be prepared personally by counsel; they can be prepared by or for the party or the party's representative as long as they are prepared in anticipation of litigation. *See* CR 26(b)(4).

Mr. Allphin argues two of the e-mails in the second index for in camera review—numbers 2 and 21—were not sent or received by attorneys at all, but were exchanged between Mr. Rivard and Mr. Peck, neither of whom are attorneys. However, number 2 on the index is an e-mail that Mr. Rivard sent to Mr. Peck *and* Ms. Lowe. *See* CP at 3239. The index sheet simply fails to list Ms. Lowe as a recipient. Number 21 on the index is an e-mail Mr. Rivard sent only to Mr. Peck. However, the substance of Mr. Rivard's e-mail is a forwarded message from Ms. Lowe, who asked Mr. Rivard to pass along the message to Mr. Peck. *See* CP at 3389.

---

[3] *Limstrom* held the broad civil discovery rule, CR 26(b)(4), applies when determining whether records are exempt from production under RCW 42.56.290, rather than the much narrower criminal discovery rule, CrR 4.7(f)(1), which only protects documents from disclosure under the PRA "'to the extent that they contain the opinions, theories or conclusions of investigating or prosecuting agencies.'" *Koenig v. Pierce County*, 151 Wn. App. 221, 230, 211 P.3d 423 (2009) (quoting CrR 4.7(f)(1)).

Mr. Allphin also argues the 21 e-mails, while originating from an attorney, do not

constitute attorney work product because they are not "mental impressions, thoughts, and

theories," and are therefore not exempt under the PRA. However, under *Limstrom* and

*Koenig*, the e-mails need only contain statements of fact gathered by an attorney or

prepared by or for the party or the party's representative in anticipation of litigation.

Without specifically describing the substance of the actual e-mails, it is clear these e-

mails contain statements of fact and legal strategies prepared by and for the various

employees of the County and Ecology in response to the Chem-Safe litigation.[4]

2. *Waiver*

Mr. Allphin argues the County waived any protected, privileged, or confidential

right to the e-mails because its employees sent them to Ecology employees throughout

the Chem-Safe litigation. Mr. Allphin specifically challenges the trial court's finding that

---

[4] Mr. Allphin argues the e-mails were not marked "confidential" or "work product" to protect from disclosure. Br. of Appellant at 24. The record does not support this argument. The first e-mail to which Mr. Allphin cites for this argument contains a disclaimer that begins, in capital letters, with "CONFIDENTIALITY NOTICE." CP at 2237. The 21 sealed e-mails all contain similar disclaimers. Mr. Allphin also argues that, even assuming the e-mails are work product, this court should order the County to produce them under CR 26(b)(4)'s exception to the work product privilege. However, CR 26(b)(4) provides that a party seeking attorney work product may obtain it *only* after showing he or she "has substantial need of the materials in the preparation of such party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Mr. Allphin fails to explain why he meets either of these requirements.

the County did not waive these privileges due to the fact that the County and Ecology

worked cooperatively to enforce the environmental laws and were thus on the same

"legal team." CP at 788.

Generally, a party waives the attorney work product privilege if that party

discloses documents to other persons with the intention that an adversary can see the

documents. *Limstrom v. Ladenburg*, 110 Wn. App. 133, 145, 39 P.3d 351 (2002).

Similarly, to qualify for attorney client privilege, a communication must be made in

confidence. *Morgan v. City of Fed. Way*, 166 Wn.2d 747, 757, 213 P.3d 596 (2009).

The presence of a third person during the communication waives the privilege, unless the

third person is necessary for the communication or has retained the attorney on a matter

of "'common interest.'" *Id.* (quoting *Broyles v. Thurston County*, 147 Wn. App. 409,

442, 195 P.3d 985 (2008)).

"The 'common interest' doctrine provides that when multiple parties share

confidential communications pertaining to their common claim or defense, the

communications remain privileged as to those outside their group." *Sanders v. State*, 169

Wn.2d 827, 853, 240 P.3d 120 (2010); *see also C.J.C. v. Corp. of Catholic Bishop of

Yakima*, 138 Wn.2d 699, 716, 985 P.2d 262 (1999). The common interest doctrine is an

exception to the general rule that the voluntary disclosure of a privileged attorney client

13

or work product communication to a third party waives the privilege. *Avocent Redmond Corp. v. Rose Elec., Inc.*, 516 F. Supp. 2d 1199, 1202 (W.D. Wash. 2007).

"The common interest or joint defense privilege applies where (1) the communication was made by separate parties in the course of a matter of common interest or joint defense; (2) the communication was designed to further that effort; and (3) the privilege has not been waived." *Id.* at 1203. A written agreement regarding the privilege is not required, but "the parties must invoke the privilege: they must intend and agree to undertake a joint defense effort." *Id.*; *see also In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("[T]he parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten.").

The common interest doctrine applies in the PRA context. *Sanders*, 169 Wn.2d at 854. "[D]ocuments that fall under the common interest doctrine are not discoverable in civil cases and so are exempt under the controversy exemption." *Id.* The *Sanders* court held the common interest doctrine exempted certain documents from disclosure under the PRA even if the attorney general's office (AGO) shared those documents with other agencies.[5] *Id.* at 840, 853-54.

---

[5] The *Sanders* court never explained what these documents were, what other agencies the AGO shared them with, or the nature of the relationship between the AGO

In contrast, in *Morgan*, a municipal court judge who was the subject of a hostile work environment investigation e-mailed the city attorney and complained the investigation created a hostile work environment for him. *Morgan*, 166 Wn.2d at 752. The judge then forwarded that e-mail message to the private e-mail address of one of the city council members. *Id.* The local newspaper filed a PRA request for the investigator's report, and the judge moved to prevent its release. *Id.* The court held the attorney client privilege did not apply to the e-mail the judge sent to the city attorney, and the e-mail was therefore not exempt under the PRA. *Id.* at 757. This was because the judge later forwarded that e-mail to the city council member and the judge failed to demonstrate a common legal interest between him and the city council member. *Id.*

Here, although the County and Ecology did not have a joint prosecution agreement, a written agreement was not required because the record demonstrates the two agencies agreed to undertake a joint/common cause in the regulatory enforcement litigation against Chem-Safe. At the very beginning of the case, Ms. Becker e-mailed Mr. Granberg, Mr. Rivard, and Mr. Bleeker and scheduled a meeting to discuss Chem-Safe's compliance with Washington's permitting, transportation, storage, and disposal regulations. Throughout the litigation, the County asked Ecology questions about Chem-Safe's testing plans and about Chem-Safe's engineering and technical arguments. The

---

and these other agencies. *See Sanders*, 169 Wn.2d at 837-41.

record demonstrates Ecology was "acting in a consultative role with respect to the civil enforcement action."[6] CP at 1412.

Mr. Allphin argues that the County and Ecology did not have a common interest because the County sued Ecology to prevent Ecology from releasing the records, thus making Ecology an opposing party for purposes of waiver. This argument conflates the two lawsuits. While the County listed Ecology as a respondent in *this case* in order to prevent Ecology from producing exempt documents, the County and Ecology were on the same legal team for purposes of the underlying regulatory enforcement action, which is separate from this PRA case.

Mr. Allphin also argues that the common interest doctrine is not a statutorily listed PRA exemption and, therefore, the County cannot use it as a basis for withholding the e-mails. The *Sanders* court expressly rejected this argument, finding that the common interest doctrine is merely a common law exception to waiver of privilege that applies when parties share a common interest in litigation. *Sanders*, 169 Wn.2d at 853.

---

[6] In fact, this collaborative relationship between the County and Ecology is statutorily required. RCW 70.105.005(10) provides that "because local conditions vary substantially in regard to the quantities, risks, and management opportunities available for such wastes, local government is the appropriate level of government to plan for and carry out programs to manage moderate-risk waste, *with assistance and coordination provided by* [*Ecology*]." (Emphasis added.)

While it is true that no attorney client relationship existed between the County prosecutor and Ecology, we hold the lack of such a relationship does not prevent the County prosecutor from seeking assistance from Ecology's technical professionals in enforcing the state and county environmental laws. Releasing these records would force government attorneys to forego communicating with other law enforcement professionals during litigation due to the fear that their opponents will obtain their mental impressions and ideas.

Because the communications between the County and Ecology throughout the Chem-Safe litigation were protected under the work product and attorney client privileges, we conclude the trial court properly sealed the sets of 11 and 21 e-mails.

A majority of the panel has determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record in accordance with RCW 2.06.040.

## ADDITIONAL FACTS

A.    THE COUNTY'S RESPONSE TO MR. ALLPHIN'S PRA REQUEST

After Mr. Allphin submitted his PRA request, Ms. Lowe and Ms. Bugni first transmitted his request to the county departments they believed might have records. They then searched the prosecuting attorney's office's physical files. Next, they searched the

office's network drive using key words. Also using key words, Ms. Bugni searched her e-mail account and Ms. Lowe searched both her own and Ms. Becker's e-mail accounts. The two then got permission from the county commissioners to search the County's archival system to find deleted e-mails. Through March 20, 2013, the County expended roughly 357 hours on Mr. Allphin's PRA response, which did not include the 115 hours spent addressing attorney work product and attorney client privilege redaction issues. Ms. Bugni personally spent over 200 hours working on the County's response.

At KCPHD, Mr. Rivard received the copy of Mr. Allphin's PRA request from Ms. Lowe. Like Ms. Lowe and Ms. Bugni, Mr. Rivard searched his office's physical files and used keywords to search the shared files on the office's computer server, his computer, and his e-mail. Mr. Rivard reviewed every e-mail he sent and received from January 1, 2010 to October 17, 2012. Mr. Rivard eventually realized some of the e-mails in his account did not contain attachments. He contacted the County's information technology department about the issue, which told him the County's archiving system changed and he needed to find the attachments in a separate archival system. After that, Mr. Rivard went to the separate archival system to print the attachments to his e-mails. Mr. Rivard reviewed his e-mails to ensure he had included all of the pages and attachments and then sent them to Ms. Lowe, so that she could send them to Mr. Allphin. Mr. Rivard also searched the County's digital camera and memory card. Mr. Rivard expended roughly

180 hours on Mr. Allphin's PRA response.

Several days after Mr. Allphin submitted his PRA request, Ms. Lowe sent Mr. Allphin a letter stating the County needed to provide the requested documents in installments due to the large number of records the County needed to retrieve and review. Ms. Lowe said the County would provide the first installment on November 8, 2012, and would then continue providing scheduled installments until it fulfilled Mr. Allphin's request.

The County then produced records in the following installments:

- November 8, 2012: County disclosed a list of 88 different court records, totaling 1,786 pages.[7]

- December 21, 2012: County produced 1,022 pages.

- January 23, 2013: the County produced 1,481 pages.

- February 27, 2013: the County produced 850 pages. In the letter, Ms. Lowe noted that the County would include a detailed log if it withheld or redacted any documents, and also noted that the County retained the right to seek court protection of exempt records.

- March 27, 2013: the County produced 2,400 pages.

- March 28, 2013: the County produced 1,007 pages, some of which were redacted or withheld, and an exemption log.

---

[7] On November 28, Ms. Lowe sent Mr. Allphin a letter in which she asked if Mr. Allphin wanted the court records, asked how he wanted the records produced, and asked from which specific departments he sought records.

- April 2, 2013: the County produced 72 pages, some of which were redacted or withheld, and an exemption log.

- April 26, 2013: the County produced 131 pages and 34 phone logs.

- May 24, 2013: the County produced 2,320 pages, including 111 e-mails without any redaction, 22 with some portions redacted. The County withheld 11 e-mails because they were either work product or attorney client privileged. The County included an exemption log.

- June 19, 2013: the County produced 10,500 pages.

- July 26, 2013: the County produced 44 e-mails without redaction.

- August 26, 2013: the County produced 28 e-mails, some of which had portions redacted. The County included an exemption log.

- September 30, 2013: the County produced 15 e-mails without redaction, three with some part redacted, and withheld 2. The County included an exemption log.

- October 28, 2013: the County produced 17 e-mails without redaction, and withheld 18 e-mails. The County included an exemption log.

- November 18, 2013: the County produced 7 e-mails with redactions and included an exemption log.

- December 23, 2013: the County produced 4 e-mails with no redactions, 5 e-mails with redactions, and withheld 10 e-mails. The County attached an exemption log.

- January 13, 2014: the County produced 52 e-mails with no redaction and 3 e-mails with redaction. The County included an exemption log.

Ms. Lowe retired in mid-2013 and Deputy Prosecutor Paul Sander assumed responsibility for responding to the PRA request. On January 28, 2014, Mr. Sander sent Mr. Allphin a letter advising him that he had concluded his search for records and the January 13, 2014 installment was the final installment.

B.     LITIGATION PRIOR TO THE FIRST IN CAMERA REVIEW HEARING

After moving for the TRO, the County discovered Mr. Allphin's former counsel would not be back from vacation until the day of the hearing, so Ms. Lowe reset the hearing for later in the week. The day before the hearing, Chem-Safe's new counsel e-mailed Ms. Lowe and asked for a continuance, which Ms. Lowe declined. Later that day, Mr. Allphin moved to disqualify Judge Scott Sparks and Judge Frances Chmelewski and submitted affidavits of prejudice for each judge—one from Mr. Allphin, and one from another one of Chem-Safe's officers.[8] The day of the hearing, Judge Chmelewski called the case, noted the existence of the two affidavits, and ruled a visiting judge would hear the case.

Visiting Judge Blaine Gibson found the affidavit filed against Judge Sparks was invalid and the case should proceed before Judge Sparks. Judge Gibson extended the TRO until Judge Sparks could review the records in camera. The County stated it no

_____

[8] Kittitas County has two superior court judges. When both judges are precluded from hearing a case, the court administrator finds a visiting judge to preside over the case, usually from Yakima County.

21

longer sought to restrain the records Ecology had already released.

C.    COUNTY ACKNOWLEDGES ERRORS FROM IN CAMERA REVIEW HEARING

After Mr. Allphin filed his amended answer, the County, through new counsel, sent Mr. Allphin a letter concerning the County's production of the remainder of the requested records. In this letter, the County stated many of the records it had listed on the exemption log were duplicates. The County also acknowledged the index of 11 e-mails it had submitted to the court at the first in camera review hearing contained errors. The County told Mr. Allphin the e-mail identified as number 7 on the index—purportedly a July 18, 2011, 7:31 a.m. e-mail from Mr. Rivard to Ms. Becker—was erroneously designated on the index. The e-mail the County actually submitted as number 7 on the index was an e-mail from Mr. Rivard to Ms. Lowe and Mr. Peck, sent on July 19, 2012, at 12:46 p.m.

The County also stated the envelope contained eight additional e-mails that were not listed on the index. The reason the index did not identify these e-mails was because they were contained in e-mail chains, and the index only listed the first e-mail in the chain. Mr. Allphin responded to the County's letter and agreed the County produced some of the records it claimed to have produced, but disagreed that the County had produced others.

22

The County moved to amend the superior court's final order from the first in camera review hearing. In its motion, the County acknowledged the errors in the index it had attached to the envelope. The County asked the court to issue an amended order that correctly listed the e-mails the County submitted for in camera review. The County also asked the court to review an additional e-mail it had failed to provide the court at the first in camera review hearing. Mr. Allphin argued the County made material misrepresentations and abused the judicial process, and asked the court to release the records as a sanction and award him fees and costs. The court determined the record was adequate and denied the County's motion.

Mr. Allphin sent the County a letter describing 11 e-mails that were still possibly missing.[9] The County said it would look into these missing e-mails. The County also produced the 8 e-mails it had failed to list on the index because they were buried in e-mail chains, and also produced the 1 additional e-mail it failed to provide the court. The County acknowledged Ecology produced these e-mails after the in camera review hearing because they were not included in the court's sealing order, thereby waiving the work product and attorney client privileges.

---

[9] These 11 e-mails are different than the 11 e-mails the court reviewed at the first in camera review hearing.

23

The County's new counsel forwarded Mr. Allphin's e-mail about the 11 possibly missing e-mails to Ms. Bugni, and Ms. Bugni searched for them in the County's archival e-mail system. Ms. Bugni forwarded the list to KCPHD so it could check its archives as well. Ms. Bugni and KCPHD were able to find several of the missing e-mails, and also found three e-mails with time and date stamps that were similar, but not identical, to e-mails Mr. Allphin claimed were missing.

The County told Mr. Allphin it had located several of the 11 "possibly missing" e-mails and produced them, and also advised it had previously disclosed 4 of them. The County also told Mr. Allphin it was still unable to locate the remainder of the possibly missing e-mails, but was able to locate three e-mails with similar delivery dates and times. The County produced these three e-mails. The County also produced a copy of handwritten notes between Mr. Granberg and Mr. Rivard.

Mr. Allphin responded that he was certain the other "possibly missing" e-mails existed and asked the County to check again. Ms. Bugni searched again and was unable to locate them on any County system.

## ADDITIONAL ANALYSIS

### A.   ADEQUACY OF EXEMPTION LOGS

Mr. Allphin argues the County's exemption logs are inadequate because none of them listed the common interest doctrine as a basis for withholding the records.

24

When an agency withholds or redacts records, its response "shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.56.210(3). The agency must do more than identify the record and the specific exemption—it must explain how the exemption applies to the record. *Block*, 189 Wn. App. at 282 (quoting *City of Lakewood v. Koenig*, 182 Wn.2d 87, 94, 343 P.3d 335 (2014)). "The level of detail necessary for a requestor to determine whether an exemption is properly invoked will depend upon both the nature of the exemption and the nature of the document or information." *City of Lakewood*, 182 Wn.2d at 95. "An agency violates the PRA by failing to provide an adequate explanation." *Block*, 189 Wn. App. at 283.

Here, the County's exemption logs all specifically identify the redacted or withheld e-mails by author, recipients, date, time, and number of pages. The logs also contain a column that provides an accurate description of the e-mails' contents. For example, number 84 on the exemption log states the record being withheld was an "E mail to Becker re CSE operations plan—questions re type of permit." CP at 668. The logs state the County redacted or withheld the e-mails under the controversy exemption, RCW 42.56.290, and list "[a]ttorney work product" as the basis for which the e-mails would not be discoverable under the civil rules. CP at 668. It was also apparent the

25

"controversy" at issue was the regulatory enforcement action surrounding the NOVA. *Cf. Sanders*, 169 Wn.2d at 846 (holding the AGO's exemptions logs were inadequate because they claimed the controversy exemption for numerous records without specifying details such as the controversy to which each record was relevant). Given that the common interest doctrine is merely a common law exception to waiver and not a separate exemption, the County's explanation that the e-mails were "work product" was sufficient to explain why the County was withholding them. Between this explanation and the County's description of each e-mail's contents, we conclude the County's exemption logs were adequate.

B.    INITIAL WITHHOLDING AND SUBSEQUENT PRODUCTION

Mr. Allphin argues the County violated the PRA when it initially withheld e-mails and then subsequently produced them.

If an agency produces documents after the requester files suit, this is not an ipso facto admission that the initial withholding of the documents was wrongful. *Sanders*, 169 Wn.2d at 849. "Rather, the appropriate inquiry is whether the records are exempt from disclosure." *Id.* "If they are exempt, the agency's withholding of them was lawful and its subsequent production of them irrelevant." *Id.* at 849-50. "If they are nonexempt, the agency wrongfully withheld the records and the appropriate penalty applies for the numbers of days the record was wrongfully withheld—in other words, until the record

26

was produced." *Id.* at 850. An agency is permitted to maintain certain documents are exempt but also produce them anyway if the agency determines their production would be innocuous. *Id.* at 849.

Here, the County initially withheld or redacted many e-mails because they were attorney work product or attorney client privileged. After Ecology inadvertently released many of these e-mails, the County no longer claimed the e-mails were exempt and subsequently produced them. The County argues it did not violate the PRA because it continually stayed in a "cooperative dialogue" with Mr. Allphin. Br. of Resp't at 39. But this is not a recognized statutory exemption. If the County withheld nonexempt e-mails, it violated the PRA.

1. *March 27-28, 2013 exemption log*

Mr. Allphin argues the County improperly withheld a chain of six e-mails on its March 27-28, 2013 exemption log. *See* CP at 1569-70. The County withheld these six e-mails on the basis that they were "[a]ttorney-client privileged e mail communications between legal counsel and client." CP at 1566. The senders and recipients of these e-mails were Brenda Larsen, who is the Kittitas County fire marshal, Alan Crankovich, who is on the Kittitas County Board of Commissioners, Barry Kerth, a deputy fire marshal, and Mr. Rivard. None of these individuals are attorneys. This chain of six e-mails was therefore not exempt from disclosure under RCW 42.56.290 and the County

27

violated the PRA when it initially withheld and subsequently produced them. Thus, a per diem penalty applies for the numbers of days these e-mails were wrongfully withheld.[10]

### 2. *April 2, 2013 exemption log*

Mr. Allphin argues the County's April 2, 2013 exemption log lists a number of e-mails that do not contain work product or attorney client communications and, therefore, the County wrongfully withheld these e-mails. Mr. Allphin does not identify specific e-mails, but cites broadly to "CP at 2236-2479." Br. of Appellant at 33. We have reviewed every e-mail to which Mr. Allphin cites and, with the exception of two, a deputy prosecutor (either Ms. Becker or Ms. Lowe) was either the sender or a recipient on every one. Accordingly, all of these e-mails were exempt from disclosure under the attorney work product privilege and/or the attorney client privilege and the County did not violate the PRA by subsequently producing them.

There are two e-mails in which a deputy prosecutor was not the sender or a recipient. The first is from Krystal Rodriguez to Mr. Peck, sent on July 18, 2011 at 7:43 a.m. *See* CP at 2274. But there is no indication the County ever actually withheld this e-mail, given that it is not listed in either of the County's exemption logs. The second is from Mr. Peck to Mr. Rivard and Ms. Bound, sent on June 14, 2012 at 8:02 a.m. *See* CP

---

[10] According to Mr. Allphin's declaration, the County eventually produced these six e-mails on July 3, 2013, or 98 days after initially withholding them. *See* CP at 1469.

28

at 2473-74. This e-mail is listed as number 93 on the County's April 2, 2013 exemption log. *See* CP at 846. But when the County produced this chain of e-mails, it did *not* redact this particular e-mail. Rather, it produced this e-mail and redacted a separate e-mail in the chain, to which Ms. Lowe was a recipient. *See* CP at 865. Thus, the County's subsequent production of these e-mails did not violate the PRA.

### 3. *Over-redaction*

Mr. Allphin argues the County over-redacted a number of e-mails.[11] He lists two e-mails in particular. The first is from Mr. Rivard to Ms. Lowe and Mr. Peck that said, "It is ok with me if you are [at the meeting] Norm." CP at 1754. The second is from Mr. Peck to the AGO and Ms. Becker and was in response to the AGO's legal opinion regarding whether their communications were privileged. The e-mail said, "Very helpful. Thanks, Mary Sue. Have a great evening, and rest of your week. (Hopefully I won't pester you any further[.])." CP at 1743.

RCW 5.60.060(2)(a) provides that *any* attorney client communication is confidential. In light of our holding that the common interest doctrine protects all confidential legal communications pertaining to Ecology and the County's joint effort in

---

[11] RCW 42.56.210(1) provides that "the exemptions of this chapter are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought."

29

the regulatory enforcement action, we conclude the County did not violate the PRA by redacting these e-mails.

### C.    FULLEST ASSISTANCE

Mr. Allphin argues the County violated the PRA by delaying its records response and failing to provide the fullest assistance.

Consistent with RCW 42.56.100, agencies must adopt rules that "provide for the fullest assistance to inquirers and the most timely possible action on requests for information," but still "prevent excessive interference with other essential functions of the agency." However, "administrative inconvenience or difficulty does not excuse strict compliance with the [PRA]." *Zink v. City of Mesa*, 140 Wn. App. 328, 337, 166 P.3d 738 (2007). "In general, an agency should devote sufficient staff time to processing records requests, consistent with the act's requirement that fulfilling requests should not be an 'excessive interference' with the agency's 'other essential functions.'" WAC 44-14-04003(2). "The agency should recognize that fulfilling public records requests is one of the agency's duties, along with its others." *Id.*

Here, the County did not delay fulfilling the records request, nor did it fail to provide assistance in a timely manner. On October 24, 2012—five business days after Mr. Allphin submitted his request—Ms. Lowe gave Mr. Allphin a detailed explanation about how the County would respond to his request. Ms. Lowe and Ms. Bugni then

30

worked together to send Mr. Allphin installments on a monthly basis throughout the rest of 2012, through 2013, and until Mr. Sander closed the request in 2014. Whenever the deputy prosecuting attorney did not anticipate being able to send the installment by the promised date because of illness or technical difficulties accessing the County e-mail system, Ms. Bugni would communicate this with Mr. Allphin.

The prosecuting attorney's office expended roughly 357 hours on Mr. Allphin's PRA response, which did not include the time spent addressing attorney work product and attorney client privilege issues. Ms. Bugni spent over 200 hours working on the prosecuting attorney's office's response, and Mr. Rivard spent 180 hours on KCPHD's response. Both offices were short-staffed, and Ms. Lowe, Ms. Bugni, Mr. Rivard, and Mr. Sander had to balance responding to a large request with their other official duties.

In fact, most of the delay in the initial stages of litigation was caused by the fact that Mr. Allphin filed affidavits of prejudice against both of the judges in a two-judge county. At the TRO hearings, visiting Judge Gibson noted that Mr. Allphin had nothing to complain about in terms of the delay, given that the case would have been much further along if he had not filed two affidavits. Judge Gibson also found the County endeavored "to resolve the matter quickly and expeditiously," and that "the delays that have resulted here have—primarily have been caused by the fact that the defendants filed

31

two affidavits." Report of Proceedings at 131-32. We conclude the County did not delay

its records response, nor did it fail to provide the fullest assistance.

D.    MR. GRANBERG'S HANDWRITTEN NOTES

Mr. Allphin argues the County possessed Mr. Granberg's handwritten notes,

which he describes as the "smoking gun memorandum," at the time he submitted his

PRA request. Br. of Appellant at 47. He contends the County intentionally withheld

these notes until it used them against him in the federal lawsuit.

"An agency is only required to provide access to public records it has or has used."

WAC 44-14-04004(4)(a). "An agency must only provide access to public records in

existence at the time of the request. . . . [I]f a public record is created or comes into the

possession of the agency after the request is received by the agency, it is not responsive

to the request and need not be provided." *Id.*

The record demonstrates Ecology—not the County—possessed Mr. Granberg's

handwritten notes at the time Mr. Allphin submitted his PRA request. Mr. Rivard (a

County employee) and Mr. Granberg (an Ecology employee) worked together to inspect

Chem-Safe's facility. Mr. Rivard sent Mr. Granberg an e-mail on March 7, 2011, to

which he attached two color photographs of chemical drums and nothing else.[12] Mr.

---

[12] Ms. Bugni also declared she used the County's archival system to search for the
March 7, 2011 e-mail and the attachment contained two photographs but no handwritten

32

Granberg then took notes based off of these photographs. Ecology was the only agency that had a copy of Mr. Granberg's notes, until Ecology sent the County a compact disc containing records that Ecology had given Mr. Allphin. This happened after Mr. Allphin filed his PRA request with the County and, therefore, the County was not required to produce it.

Mr. Allphin argues the County possessed Mr. Granberg's notes at the time of Mr. Allphin's PRA request because the notes were transmitted from the County's copier to a County employee and then forwarded to an Ecology employee in 2011. To support this argument, Mr. Allphin cites to his declaration. However, his declaration says nothing about a copier of any kind, and simply repeats that Mr. Rivard sent Mr. Granberg the notes in the March 7, 2011 e-mail.

Mr. Allphin also cites to the County's filings in federal court, which stated that on March 7, 2011, Mr. Granberg gave Mr. Rivard handwritten notes based on Mr. Granberg's review of photographs of Chem-Safe's facility. *See* CP at 1955-56, 1965-66. The County included this in its filing because it initially believed the March 7, 2011 e-mail included Mr. Granberg's notes based on one of Mr. Allphin's earlier declarations. Based on all of the evidence in the record, reasonable minds could not differ that the County did not possess Mr. Granberg's notes at the time Mr. Allphin filed his PRA

notes.

33

request. We conclude the County did not wrongfully withhold Mr. Granberg's handwritten notes.

E.     MR. ALLPHIN'S REQUEST TO UNSEAL THE 11 E-MAILS AS A SANCTION

Mr. Allphin argues the County abused the in camera review process at the September 9, 2013 hearing by including e-mails in the envelope that did not match the accompanying index. Mr. Allphin asks this court to release the 11 e-mails as a sanction, regardless of their PRA exemption status. Mr. Allphin cites RCW 2.28.010(3), which gives Washington courts power "[t]o provide for the orderly conduct of proceedings before it or its officers," and *Yurtis v. Phipps*, 143 Wn. App. 680, 693, 181 P.3d 849 (2008), which is a case about a vexatious litigant who filed multiple frivolous lawsuits.

Mr. Allphin is correct that the e-mails the County submitted in the envelope at the first in camera review hearing did not correspond to the e-mails the County listed on the index. The County argues that this was a mutual mistake, that the parties spoke past one another at the hearing, and that it sent Mr. Allphin a letter and moved the trial court to clarify the ruling when it realized its error.

It is difficult to see how this was a "mutual mistake" when the County prepared the envelope, prepared the index, and was the only party with access to the 11 e-mails. However, in this case, the County's error did not tangibly harm Mr. Allphin. Because the County included the eight extra e-mails in the envelope but did not list them on the index,

34

the trial court did not include those e-mails in its sealing order. Because of this, Ecology later produced them to Mr. Allphin. Thus, the County's failure to list the e-mails on the index actually *benefitted* Mr. Allphin.

In addition, the parties agreed to include the July 19, 2012, 12:46 p.m. e-mail the County had erroneously put in the envelope at the first in camera review hearing on the list of 21 e-mails for the court to review at the second in camera hearing. The trial court ultimately determined this e-mail was exempt from disclosure. There is no evidence in the record that the e-mail the County originally designated as number 7 on the index— from Mr. Rivard to Ms. Becker on July 18, 2011 at 7:31 a.m.—ever actually existed. The parties do not discuss it in any of their subsequent correspondence, and it is not listed on any of the County's exemption logs. Because the County's error did not actually harm Mr. Allphin, we reject his invitation to unseal the 11 e-mails the trial court sealed at the first in camera review hearing as a sanction.

F.    COSTS AND PER DIEM PENALTY

Mr. Allphin requests costs, including reasonable attorney fees, incurred on appeal. Under RCW 42.56.550(4), a party that prevails against an agency in an action under the PRA is entitled to an award of "all costs, including reasonable attorney fees, incurred in connection with such legal action." When a party seeking disclosure under the PRA prevails with respect to some but not all of the requested documents, costs and

attorney fees should be awarded only in relation to the documents or portions that the court requires to be produced, and not to any documents or portions the court finds to be exempt from production. *Sanders*, 169 Wn.2d at 867, 870.[13] Mr. Allphin prevailed very narrowly and is entitled only to an award of costs and attorney fees reasonably incurred in obtaining the six e-mails located at CP 1569-70.

We direct our court commissioner to determine the appropriate cost and attorney fee award for those costs Mr. Allphin incurred on appeal relating to these six e-mails. Consistent with RAP 18.1(i), we direct the trial court to determine the appropriate cost and attorney fee award for those costs Mr. Allphin incurred in the trial court relating to these six e-mails. In addition to an award of costs and attorney fees, RCW 42.56.550(4) gives a court discretion to award Mr. Allphin a per diem penalty for each day the County withheld these records. We defer this discretionary award to the trial court. If the trial

---

[13] This author notes that while an award of *attorney fees* should be apportioned between successful and unsuccessful PRA claims, an award of other types of costs arguably should not be apportioned. This is because RCW 42.56.550(4) directs that *"all costs"* must be awarded to a person who prevails against an agency on a PRA claim. (Emphasis added.) "All costs" strongly suggests that the legislature intended for courts to award a successful PRA claimant "all costs" incurred. The legislature qualified its directive by using the term "reasonable" not before costs, but before "attorney fees."

Nevertheless, Mr. Allphin has not raised nor briefed this issue, and we do not find any clear authority. We therefore will not resolve the statutory ambiguity here. *See Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 352, 831 P.2d 724 (1992) (stating that when the law is unsettled, an appellate court should not attempt to resolve an issue unless it is briefed by the parties).

court exercises its discretion to award a penalty, it also has discretion to treat the six e-mails as one group for purposes of calculating the daily penalty. *See Double H, LP v. Dep't of Ecology*, 166 Wn. App. 707, 714, 271 P.3d 322 (2012).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.