YU, J. (dissenting)
¶ 48 I agree with the majority on many points in this case. The content of the disputed e-mails is clearly work product, so unless the protections of the work product doctrine have been waived, the e-mails are exempt from production in accordance with the Public Records Act (PRA), chapter 42.56 RCW. Majority at 1240-41; RCW 42.56.290. And I agree with the implied waiver doctrine as articulated by the majority in this case:
A party waives its work product protection when "the client, the client's lawyer, or another authorized agent of the client ... discloses the material to third persons in circumstances in which there is a significant likelihood that an adversary or potential adversary in anticipated litigation will obtain it."
Majority at 1241-42 (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS , § 91(4) ( AM. LAW INST . 2000) ). I further agree that Kittitas County (County) and the Department of *718 Ecology had a common legal interest in this litigation, and I agree that, ordinarily , "[a] party can share work product with coparties and others who are similarly aligned on a matter of common interests because such parties are unlikely to disclose work product to adversaries." Id. at 1243.
¶ 49 However, the County and Ecology are not ordinary parties. They are independent public agencies with independent obligations to comply with the PRA. I would hold that the circumstances under which the County voluntarily disclosed the disputed e-mails to Ecology in this case did create a significant likelihood that an adversary would obtain them and, therefore, that the County presumptively waived the protections of the work product doctrine. And while the common interest doctrine can provide an exception to presumptive waiver by voluntary disclosure, I would hold that it does not apply here. I therefore respectfully dissent.
ANALYSIS
¶ 50 For obvious reasons, as explained by the majority, an attorney is entitled to protect his or her thoughts, impressions, and litigation strategies. Id. at 1239-39. However, an attorney who practices within a public agency that is subject to our public disclosure laws surely must appreciate the reality that all communications could be subject to production once shared with a third party. I would hold that attorneys who wish to benefit from the work product doctrine's protections must take reasonable steps to safeguard the confidentiality of their materials and that in this case, there is no evidence in the record that the County did so.
A. Voluntary disclosure of work product to a third-party public agency presumptively waives work product protections
¶ 51 The County and Ecology are both subject to the PRA's " 'strongly-worded mandate for open government.' "
*719 Fortgang v. Woodland Park Zoo, 187 Wash.2d 509, 512, 387 P.3d 690 (2017) (quoting Rental Hous. Ass'n of Puget Sound v. City of Des Moines, 165 Wash.2d 525, 527, 199 P.3d 393 (2009) ). It is certainly true that a public agency's work product enjoys the same substantive level of protection as the work product of a private litigant in the civil discovery process. RCW 42.56.290 ; CR 26(b)(4) ; Sanders v. State, 169 Wash.2d 827, 854, 240 P.3d 120 (2010) ; Soter v. Cowles Publ'g Co., 162 Wash.2d 716, 743, 174 P.3d 60 (2007) (plurality opinion). However, we should account for the fact that the PRA creates an entirely different procedure for the public to attempt *1247 to obtain any record, including work product, that is "prepared, owned, used, or retained by any state or local agency." RCW 42.56.010(3). This procedure, by design, substantially increases the likelihood that anyone, including a litigation adversary, will obtain the records. Therefore, I would hold that voluntary disclosure to a third-party public agency presumptively waives the protections of the work product doctrine.
¶ 52 In accordance with the PRA, every public record of every public agency is presumptively "available for public inspection and copying ... unless the record falls within the specific exemptions of [the PRA]." RCW 42.56.070(1). Everyone in the world is entitled to request a public agency's records at any time and for almost any reason. This is true even if the requester is an adversary to a public agency, and even if the requester is likely attempting to use the PRA in order to gain an advantage in civil litigation, because absent a specific statutory provision to the contrary, "agencies may not inquire into the identity of the requestor or the reason for the request." Cornu-Labat v. Hosp. Dist. No. 2 , 177 Wash.2d 221, 240, 298 P.3d 741 (2013).
¶ 53 Unlike civil discovery disputes, PRA disputes can be resolved only in an independent cause of action, and the PRA places the burden on the party resisting production to prove there is an applicable exemption. Soter, 162 Wash.2d at 731, 174 P.3d 60. The PRA further provides that even if the party proves *720 an applicable exemption, it cannot obtain an injunction to prevent public examination of the records unless it also proves that "such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." RCW 42.56.540.
¶ 54 Disclosure to a public agency does not by any means make it certain that an adversary will be able to access the materials. It does, however, substantially increase the likelihood of that happening because once the PRA applies, adversaries have an entirely separate mechanism to obtain the materials outside of the ordinary civil discovery process. That is well illustrated by the facts of this case.
¶ 55 Ecology had no statutory obligation to inform the County of Sky Allphin's PRA request, but it chose to do so as a matter of discretion. See id. Upon learning of the request, the Kittitas County Prosecutor's Office "immediately contacted Ecology to ask that any records involving communications between the Kittitas County civil deputy prosecutor and Ecology professional and technical staff not be disclosed to Respondent Allphin until the County could seek court protection." Clerk's Papers (CP) at 105. Ecology's public records officer agreed to refrain from disclosing the disputed e-mails so that the County could seek a court order enjoining disclosure. However, from the time of the initial pleadings, Ecology has consistently stated that it did not intend to resist Allphin's request for the disputed e-mails and that it would have produced them if the County had not filed this declaratory judgment action.
¶ 56 The PRA provides actual or potential litigation adversaries with a procedure that substantially increases their likelihood of obtaining work product that is prepared, owned, used, or retained by a public agency. I would therefore adopt a bright-line rule that voluntary disclosure to a third-party public agency presumptively waives work product protection. RESTATEMENT § 91(4). This rule would appropriately reflect the PRA's broad mandate for public disclosure.
*721 Fortgang, 187 Wash.2d at 512, 387 P.3d 690. A bright-line rule would also give due regard for the importance of maintaining predictability because "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." Upjohn Co. v. United States, 449 U.S. 383, 393, 101 S.Ct. 677, 66 L.Ed. 2d 584 (1981). And finally, it would reflect the fact that from the time of its inception, the work product doctrine has always been "an intensely practical one, grounded in the realities of litigation in our adversary system." United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed. 2d 141 (1975). Whenever a public agency is a party, the PRA is an unavoidable reality of litigation.
*1248 B. While the common interest doctrine can provide an exception to presumptive waiver by voluntary disclosure, it does not apply in this case
¶ 57 This court recognizes an exception to implicit waiver by voluntary disclosure pursuant to the " 'common interest' doctrine." Sanders, 169 Wash.2d at 853, 240 P.3d 120. And while I believe that the majority's multifactor test introduces unnecessary uncertainty in applying the common interest doctrine, I do agree that the County and Ecology had a common legal interest in the underlying litigation because they both "anticipate[d] litigation against a common adversary on the same issue or issues." United States v. Am. Tel. & Tel. Co., 206 U.S. App. D.C. 317, 642 F.2d 1285, 1299 (1980) ; see majority at 1243-45.
¶ 58 However, I would hold that the existence of a common legal interest does not automatically satisfy the common interest doctrine in all circumstances.[1] Contra majority at 1244-45. Instead, I would hold that when at least one *722 of the commonly interested parties is a public agency subject to the PRA, the parties must have some kind of mutual understanding that they will maintain confidentiality when they voluntarily share work product. See Br. of Amici Curiae Wash. Coal, for Open Gov't (WCOG), Am. Civil Liberties Union of Wash. (ACLU), & Spokesman-Review at 5-6. And the record in this case shows that Ecology and the County had no such mutual understanding at the time they shared their work product.
¶ 59 There is no doubt that public agencies often must collaborate and should not automatically lose the protections of the work product doctrine every time they do so in writing. As noted by the Court of Appeals in this case, the County's disclosures to Ecology were made for the purpose of "seeking assistance from Ecology's technical professionals in enforcing the state and county environmental laws." Kittitas County v. Allphin, 195 Wash. App. 355, 370, 381 P.3d 1202 (2016), review granted, 187 Wash.2d 1001, 386 P.3d 1089 (2017). Without question, this is an entirely appropriate purpose for disclosing work product between government agencies, and in many cases such collaboration is necessary for the agencies to perform their duties. E.g., RCW 70.105.005(10). The Court of Appeals was correct to note that if such an interagency disclosure necessarily waives the work product doctrine, public agencies may "forgo communicating with other law enforcement professionals during litigation due to the fear that their opponents will obtain their mental impressions and ideas." Kittitas County, 195 Wash. App. at 370, 381 P.3d 1202.
¶ 60 However, this concern does not justify a rule that any time two or more public agencies collaborate on a common legal interest, all interagency disclosures necessarily retain the protections of the work product doctrine. Such an approach would effectively treat all public agencies as a single public agency, or as members of "the same 'legal team.' " Br. of Amici Curiae WCOG, ACLU, & Spokesman-Review *723 at 3. We should reject that approach as inconsistent with the PRA.[2] Id. at 4.
¶ 61 Instead, given the substantial increase in the likelihood that an adversary will obtain work product if it is in the possession of a third-party public agency, discussed above, we should require that the parties have a mutual understanding that each will take reasonable steps to maintain the confidentiality of work product materials, including resisting production pursuant to the PRA.[3]
*1249 While I agree with the majority that no written agreement is required, the record here shows that the County and Ecology did not have any mutual understanding at all. See majority at 1243-44.
¶ 62 Critically, in July 2011, Norm Peck, an environmental specialist employed by Ecology who had been working with the County, directly asked the County's attorney, "Should these e[-]mails be considered attorney-client privileged?" CP at 777. The attorney for the County responded that Ecology "is not my client (Kittitas County is), therefore, these e[-]mails are not attorney-client privileged." Id. at 776. The County's attorney referred Peck to an assistant attorney general (AAG) for more information.
¶ 63 Peck then e-mailed the following to both the County's attorney and the AAG:
I'm not sure I've encountered this particular situation before viz attorney-client privilege.... I would like to get greater clarity on the question of whether, when advising or discussing with the county in matters bearing on legal issues[,] there *724 exists any privilege. This discernment will likely impact content in some communications, as some may bear on legal strategies.
Id. at 776 (emphasis added). The AAG responded to both Peck and the County's attorney in relevant part as follows:
In general terms, I do not think the county would be viewed as part of the state in this instance, particularly because the [Attorney General's Office] is specifically identified as providing legal services to state officials and state agencies, and we do not provide legal assistance to counties. The exception to this is in the criminal context when our office does on occasion take on a criminal matter. Thus, I think the starting assumption should be that if an Ecology staff person shares privileged information with the county sharing that information would likely result in a waiver of any associated privilege.
That is not to say that there are no options here for keeping information privileged. If there is a particular matter that Ecology and county are working on together and there is likely to be enforcement, there may be an ability for the two entities to enter a joint prosecution agreement-our office has assisted in such agreements in other matters. I don't know enough about the current situation to know whether it might work here.
Id. at 775 (emphasis added). Peck thanked the AAG for her advice.
¶ 64 From this exchange, we know that both Ecology and the County expected to share information regarding mental impressions and legal strategies in the underlying litigation and that Ecology, at least, was interested in keeping some of that information confidential. We also know that both Ecology and the County were aware that any materials sent via e-mail might be subject to the PRA because the e-mail exchange specifically includes a notice that "[a]ll email sent to this address will be received by the Kittitas County email system and may be subject to public disclosure under Chapter 42.56 RCW and to archiving and review."Id. at 777. We further know that both Ecology and the County were specifically advised that the attorney-client *725 privilege was, at best, a questionable basis for protecting confidentiality. And finally, we know that both Ecology and the County were told that there may be options for protecting confidentiality in the context of a specific case.
¶ 65 However, there is no indication that either Ecology or the County actually made any further efforts to determine whether or how to protect confidentiality in this specific case. In fact, the record shows precisely the opposite. If the County and Ecology truly had a mutual understanding at the time of disclosure that each would take reasonable steps to maintain the confidentiality of the other's work product, then there would have been no reason for Ecology to ask whether the unrelated attorney-client privilege would also provide confidentiality. And even if Ecology's nonattorney employee was uncertain, surely the attorney for the County would have at least mentioned the work product or common interest doctrines when responding to his question (unless, of course, the County did not formulate that basis for resisting production until after the disclosures were made). And finally, as noted above, Ecology was prepared to produce the disputed e-mails in response to Allphin's PRA request and was prevented from doing so only because *1250 the County filed this declaratory judgment action.
¶ 66 Ecology thus clearly did not have a mutual understanding with the County that both agencies would maintain the confidentiality of the disputed e-mails. Without such an understanding, the County evinced "[i]ndifference to" the substantial likelihood that an adversary could obtain the materials, which "indicates that protection of the immunity was not important to the person claiming the protection" at the time of the disclosure. RESTATEMENT § 91 cmt. b. Therefore, I would hold that the common interest doctrine does not apply.
*726 CONCLUSION
¶ 67 I would hold that the protections of the work product doctrine were waived in this case, that the common interest doctrine does not provide an exception to waiver based on the record presented here, and that the disputed e-mails are subject to compelled production pursuant to the PRA. I therefore respectfully dissent.
Fairhurst, C.J.
González, J.
MADSEN, J. (concurring in dissent)
¶ 68 I agree with the dissent's conclusion that work product protection was waived in this case. I write separately, however, because, in my view, government parties should be treated the same as private parties, as neither the Public Records Act (PRA), chapter 42.56 RCW, nor the Civil Rules distinguish work product protection based on who the parties are. I would hold that the work product protection is waived anytime a party voluntarily discloses its work product without a mutual understanding that the parties will maintain confidentiality, regardless of whether the parties are public agencies subject to the PRA or private individuals.
¶ 69 Accordingly, I concur in the dissent.

Likewise, the fact that a document is literally the product of one's work does not automatically mean it is protected by the work product doctrine. Majority at 1239 (" '[t]he work product doctrine does not shield records created during the ordinary course of business,' but applies only to those materials 'prepared in anticipation in litigation' " (quoting Morgan v. City of Federal Way, 166 Wash.2d 747, 754, 213 P.3d 596 (2009) ) ).

Notably, the federal Freedom of Information Act does specifically exempt work product that is shared between different agencies. 5 U.S.C. § 552(b)(5). The PRA, however, does not, and Washington applies the common interest doctrine as an exception to waiver, not as an expansion of the work product doctrine or as an independent exemption. Sanders, 169 Wash.2d at 853-54, 240 P.3d 120.

Although by statute, Ecology must provide "assistance and coordination" to counties in managing moderate-risk waste, Ecology is indisputably a separate agency from the County. RCW 70.105.005(10). Ecology is therefore a third party for purposes of evaluating implicit waiver by voluntary disclosure, and it is also a public agency subject to the PRA.